**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

**HEIDI RALSTON, on behalf of the ARCO Holdings Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**

**Plaintiff,**

**v.**

**ROBERT E. LESSER,**
**AEGIS TRUST COMPANY, LLC,**
**CRAIG A. BRIDELL, in his individual capacity and as Trustee of the Craig A. Bridell Revocable Trust u/t/a dated October 8, 2008,**
**JAMES P. KEEVEN,**
**JEFFREY L. COOK, in his individual capacity and as Trustee of the Jeffrey L. Cook Revocable Living Trust u/t/a dated August 7, 1995, as amended,**
**RICHARD R. ARNOLDY, in his individual capacity and as Trustee of the Richard R. Arnoldy Revocable Trust dated January 21, 1991, as amended,**
**STEPHEN F. HOLSTE, in his individual capacity and as Trustee of the Stephen Holste Revocable Trust dated October 21, 2011,**
**CHARLES E. FRANKE II, in his individual capacity and as Trustee of the Charles E. Franke II Declaration of Trust dated January 30, 2018, as amended, and**
**TONY ALAN ROESCHLEIN, in his individual capacity and as Trustee of the Tony Alan Roeschlein Trust dated September 15, 2006,**

**Defendants.**

**Case No. 4:25-cv-01325-SEP**

## AMENDED COMPLAINT

Plaintiff Heidi Ralston, by her undersigned attorneys, on behalf of the ARCO Holdings Employee Stock Ownership Plan, and similarly situated participants in the Plan and their beneficiaries, alleges upon personal knowledge, the investigation of her counsel, and upon information and belief as to all other matters, as to which allegations she believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1. Plaintiff Heidi Ralston ("Plaintiff") brings this suit against Aegis Trust Company, LLC and its Managing Member, Robert E. Lesser (together, "the Trustee"), who served as the fiduciary trustee for the ARCO Holdings Employee Stock Ownership Plan (the "Plan" or the "ESOP") at the time the Plan acquired shares of ARCO National Holdings, Inc. ("ANH" or the "Company," f/k/a ARCO Holdings Parent, Inc.) in 2019.

2. Plaintiff also brings suit against the Company officers, directors and parties in interest to the Plan from whom the Plan acquired the stock, and the respective trusts owned directly or indirectly or controlled or held by them or of which they held a beneficial interest (described more fully below): Craig A. Bridell as an individual and as Trustee of the Craig A. Bridell Revocable Trust, James P. Keeven, Jeffrey L. Cook as an individual and as Trustee of the Jeffrey L. Cook Revocable Living Trust, Richard R. Arnoldy as an individual and as Trustee of the Richard R. Arnoldy Revocable Trust, Stephen F. Holste as an individual and as Trustee of the Stephen Holste Revocable Trust, Charles E. Franke II as an individual and as Trustee of the Charles E. Franke II Declaration of Trust, and Tony Alan Roeschlein as an individual and as Trustee of the Tony Alan Roeschlein Trust (collectively the "Selling Shareholders").

3. Plaintiff is a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan who was vested in shares of Company stock allocated to her account in the Plan.

4. This action is brought under Sections 404, 405, 406, 409, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1105, 1106, 1109, and 1132(a), for losses suffered by the Plan and its participants caused by the Trustee when it caused the Plan to engage in ERISA prohibited transactions in connection with its leveraged purchase of ANH stock from the Selling Shareholders, and other plan-wide relief. Specifically, the Trustee caused the Plan to engage in prohibited transactions under ERISA Section 406(a)(1)(A), (B) and (D), 29 U.S.C. § 1106(a)(1)(A), (B) and (D), when it caused the Plan to purchase Company stock from the Selling Shareholders and transfer assets of the Plan to them, and financed that purchase with loans from the Selling Shareholders and the Company, who were parties in interest to the Plan. The Selling Shareholders, as the counterparties to the transactions and as ANH and subsidiary executives and directors, were knowing participants in the prohibited transactions.

5. As alleged below, the Plan, Plaintiff, and all Plan participants have been injured and participants deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

6. At all relevant times, ANH was a closely held private company, the Plan's sponsor, and a party in interest to the Plan. ANH established the Plan to be retroactively effective as of January 1, 2019.

7. On December 31, 2019, the Plan, through its trust, the ARCO National Holdings, Inc. Employee Stock Ownership Trust ("ESOT"), purchased from the party in interest Selling Shareholders, directly or indirectly, 647,353 shares of the Company's common stock for an

ultimate purchase price, after a working capital adjustment, of approximately $160,834,853. The ESOP financed the entire purchase with loans from the Selling Shareholders that were subsequently assigned to the Company (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction").

8. The Trustee represented the Plan and its participants as fiduciary trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction and to authorize the Transaction on the Plan's behalf. The stock and loan transactions that the Trustee caused the Plan to enter into with parties in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), were prohibited transactions under ERISA § 406(a), 29 U.S.C. § 1106(a).

9. The Selling Shareholders—including Defendants Bridell, Keeven, Cook, Arnoldy, Holste, Franke, and Roeschlein—sold shares in the ESOP Transaction, either directly in their individual capacity, or in their capacity as trustees of trusts. Bridell, Keeven, Cook, and Holste were ANH executives at the time of the Transaction. Bridell was ANH's Chairman of the Board of Directors and days before the Transaction represented he was ANH's President; Keeven was an ANH Director and President of ANH operating companies including ARCO National Construction and represented he was ANH's President in the 2019 tax year; Cook was an ANH Director and its Secretary; and Holste was an ANH Director and its Treasurer and Vice President–Finance. Bridell led ANH's predecessor and principal operating company, ARCO National Construction, for many years from its creation in 2000. Cook and Arnoldy were founders in 1992 of the ARCO Family of construction companies of which ANH and ARCO National Construction are a part. At the time of the ESOP Transaction, Arnoldy served on the board of ANH subsidiaries and related companies, including ARCO National Construction-KC,

and ARCO National Living Group, Inc., and ARCO Design/Build. Franke was a long-serving executive in the ARCO Family of companies, including as an officer and director at ARCO Design/Build in 2019 who was closely involved with the ESOP Transaction. Specifically, the ANH controller reported to Franke, and Franke was involved with the preparation, review and approval of financial projections prior to the ESOP Transaction.

10. The ESOP paid more than fair market value for ANH stock for several reasons as detailed below. Among other things, the Trustee and its financial advisor relied on unreasonably optimistic financial projections. At the time of the ESOP Transaction, ANH leadership set an aggressive target of 10% profit margins even though ANH had regularly failed to meet such projections and a 10% margin was much higher than industry average. The Trustee and its financial advisor caused the ESOP to pay a control value even though the ESOP did not obtain control of ANH. And the Trustee and its advisor applied a discount for lack of marketability premised on the ESOP obtaining put rights that it did not receive, as put rights ran to participants and not to the buyer ESOP. These valuation errors caused the ESOP to pay tens of millions of dollars in excess of fair market value.

11. Employees of ANH and participants in the ANH ESOP including Plaintiff have not been provided details about the ESOP Transaction or provided with documents that memorialized the Transaction. As a result, many of the specific details of the ESOP Transaction are "peculiarly within the possession and control of [Defendants.]" *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) ("If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.").

12. The Selling Shareholders were ANH's senior leadership, and they were centrally involved in conceiving of, facilitating, and executing the Transaction and had access to and knowledge of company financials and projections, Company control features before and after the Transaction, and other Company information. The Selling Shareholders are liable under ERISA for knowingly participating in the prohibited transactions. Defendants Bridell, Keeven, Cook, Holste and Franke are liable for breaching fiduciary and co-fiduciary duties.

13. Through this action, Plaintiff seeks to enforce her rights under ERISA and the Plan. Specifically, Plaintiff seeks, in the alternative, to recover the losses incurred by the Plan and the improper profits realized by Defendants resulting from their causing prohibited transactions and knowingly participating in the prohibited transactions, and equitable relief, including reformation of Transaction contracts, rescission of the Transaction (as a fallback remedy only in lieu of a monetary award of the Plan's losses, restitution or disgorgement), and removal of the Trustee as a fiduciary and enjoinment of it from acting as a fiduciary for any employee benefit plan that covers or includes any ANH employees or members of the Class. Plaintiff requests that the Trustee, Bridell, Keeven, Cook, and Holste be required to restore any losses to the Plan arising from their ERISA violations, Defendants be ordered to disgorge to the Plan any improper profits, that these prohibited transactions be declared void, and any monies recovered for the Plan to be allocated to the accounts of the Class members.

## **JURISDICTION AND VENUE**

14. This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a)(2) and (a)(3), 29 U.S.C. § 1132(a)(2) and (a)(3), to require Defendants to make good to the Plan losses resulting from their violations of the provisions of Title I of ERISA, to restore to the Plan any profits that have been made by

breaching fiduciaries, parties in interest, or others through the receipt or use of Plan assets in violation of ERISA, and to obtain other appropriate equitable relief and legal remedies in order to redress violations and enforce the provisions of ERISA.

15. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and it has original jurisdiction pursuant to 28 U.S.C. § 1331.

16. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this District, because some of the events or omissions giving rise to the claims occurred in this District, and because a defendant resides or may be found in this District. The Plan was reported in the Plan's Form 5500 to be administered in St. Louis, Missouri at the time the initial Complaint was filed and is currently reported to be administered in Brentwood, Missouri.

## PARTIES

17. **Plaintiff Heidi Ralston** is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since 2019. Plaintiff resides in Oswego, Illinois. She was a Tech Analyst and Construction Applications Lead at ARCO Business Services, supporting ANH. She was employed there from August 2017 to September 2022. At the time she left employment at ARCO, she was vested in shares of Company stock in her ESOP account.

18. **Defendant Aegis Trust Company, LLC** ("Aegis Trust"), a New Hampshire limited liability company, is the surviving entity following a merger effective on July 18, 2023, with Aegis Fiduciary Services, LLC ("Aegis Fiduciary," and together with Aegis Trust, "Aegis"), which at the time of the ESOP Transaction was a New York limited liability company. Aegis Fiduciary was founded in 2017. Aegis Trust was created on May 4, 2023.

19. At all relevant times, Aegis provided trustee services to privately held companies wishing to sponsor employee stock ownership plans. Aegis Fiduciary's "type of business or services" was reported by the company to be "Fiduciary services."

20. **Defendant Robert E. Lesser**, at the time of the ESOP Transaction, was the Managing Member, Chief Executive Officer (CEO), and owner of Aegis Fiduciary. Defendant Lesser is the President and CEO of Aegis Trust.

21. Robert E. Lesser and Aegis Fiduciary, hereinafter together the "Trustee," served as the Trustee and fiduciaries of the Plan at the time of the ESOP Transaction. The Trustee had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on behalf of the Plan. Aegis Fiduciary provided staff—including the Aegis Fiduciary Committee—fiduciary insurance, an "internal process" and documents including its "list of the legal and financial documents needed to conduct its due diligence," and office space for its and Lesser's use as transaction trustee in the ESOP Transaction.

22. In an "Aegis Fiduciary Brochure" published on May 20, 2019, Aegis Fiduciary advertised that it was: "SPECIALIZING IN TRUSTEE SERVICES TO PRIVATELY-HELD COMPANIES THAT SPONSOR EMPLOYEE STOCK OWNERSHIP PLANS (ESOPS)." Aegis Fiduciary advertised that: "Aegis's only business is providing trustee services" and "Aegis maintains sufficient insurance to cover any losses associated with claims by third parties." Aegis Fiduciary further stated: "When an ESOP-sponsoring company appoints the Aegis team as trustee, Aegis is responsible for making the fiduciary decision to acquire the stock of that company from its owners." Aegis Fiduciary explained that "selling shareholders and Aegis as trustee negotiates the terms of the transaction." Aegis Fiduciary further represented that: "Aegis makes all decisions through its fiduciary committee that consists of experienced attorneys, a

certified public accountant and an accredited valuation advisor." Aegis Fiduciary further explained: "The committee also focuses on loan terms, compensation for the selling shareholders, board composition, synthetic equity and other pertinent issues."

23. Aegis Fiduciary utilized its Fiduciary Committee to investigate, negotiate, and authorize the ESOP Transaction here.

24. At the time of the ESOP Transaction, the Trustee was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

25. **Defendant Craig A. Bridell**, in his individual capacity, was at the time of the ESOP Transaction Chairman of the ANH Board of Directors and was a director and/or officer or a person with powers or responsibilities similar to those of a director and/or officer of related organizations whose employees were covered by the Plan, including but not limited to ARCO National Construction and ARCO Specialty Construction, subsidiaries of ANH. He was a selling shareholder in the ESOP Transaction, directly or indirectly. He resides or may be found in this District. Defendant Bridell was a fiduciary with respect to the Plan at the time of the ESOP Transaction because he served on the ANH Board of Directors and the Company is the Plan's Named Fiduciary. As a director, he exercised the Board's fiduciary authority to appoint other fiduciaries, including the ESOP Trustee and the ESOP Committee.

26. Defendant Bridell was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), at the time of the ESOP Transaction as a director and/or officer of ANH, and/or

as a director or officer or individual having powers or responsibilities similar to those of a director or officer of related organizations whose eligible employees were covered by the Plan; and/or, on information and belief, as a 10 percent or more shareholder, directly or indirectly, of ANH. Bridell was also a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), as a Plan fiduciary.

27. **Defendant Craig A. Bridell as Trustee of the Craig A. Bridell Revocable Trust u/t/a dated October 8, 2008 ("Bridell Trust")**, was a selling shareholder in the ESOP Transaction, directly or indirectly. As a 10% or more shareholder in ANH, acting through Defendant Bridell as the Trustee, the Bridell Trust was a "party in interest" as to the ESOP as defined in ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H). The Bridell Trust was also a party in interest under ERISA § 3(14)(G), 29 U.S.C. § 1002(14)(G) because upon information and belief Defendant Craig A. Bridell, a fiduciary to the Plan, is or was the beneficial owner or holder of 50% or more of the Bridell Trust.

28. **Defendant James P. Keeven** was at the time of the ESOP Transaction a Director and/or President of ANH and/or a director and/or officer or a person with powers or responsibilities similar to those of a director and/or officer of related organizations whose employees were covered by the Plan, including ARCO National Construction, and ARCO Specialty Construction. He was a selling shareholder in the ESOP Transaction, directly or indirectly. He resides or may be found in this District. Defendant Keeven was a fiduciary with respect to the Plan at the time of the ESOP Transaction because he served on the ANH Board of Directors and the Company is the Plan's Named Fiduciary. As a director, he exercised the Board's fiduciary authority to appoint other fiduciaries, including the ESOP Trustee and the ESOP Committee.

29. Defendant Keeven was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), at the time of the ESOP Transaction as a director and/or officer of ANH, and/or as a director or officer or individual having powers or responsibilities similar to those of a director or officer of related organizations whose eligible employees were covered by the Plan; and/or, on information and belief, as a 10 percent or more shareholder, directly or indirectly, of ANH. Keeven was also a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), as a Plan fiduciary.

30. **Defendant Jeffrey L. Cook**, in his individual capacity, was a co-founder in 1992 of the ARCO Family of construction companies. He was at the time of the ESOP Transaction a Director and the Secretary of ANH, and was a director and/or officer or a person with powers or responsibilities similar to those of a director and/or officer of related organizations whose employees were covered by the Plan, including but not limited to ARCO National Construction and ARCO Specialty Construction. He was a selling shareholder in the ESOP Transaction, directly or indirectly. He resides or may be found in this District. Defendant Cook was a fiduciary with respect to the Plan at the time of the ESOP Transaction because he served on the ANH Board of Directors and the Company is the Plan's Named Fiduciary. As a director, he exercised the Board's fiduciary authority to appoint other fiduciaries, including the ESOP Trustee and the ESOP Committee.

31. Defendant Cook was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), at the time of the ESOP Transaction as a director of ANH, and/or as a director or individual having powers or responsibilities similar to those of a director of related organizations whose eligible employees were covered by the Plan; and/or, on information and belief, as a 10

percent or more shareholder, directly or indirectly, of ANH. Cook was also a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), as a Plan fiduciary.

32. **Defendant Jeffrey L. Cook as Trustee of the Jeffrey L. Cook Revocable Living Trust u/t/a dated August 7, 1995, as amended ("Cook Trust")** was a selling shareholder in the ESOP Transaction, directly or indirectly. As a 10% or more shareholder in ANH, acting through Defendant Cook as the Trustee, the Cook Trust was a "party in interest" as to the ESOP as defined in ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H). The Cook Trust was also a party in interest under ERISA § 3(14)(G), 29 U.S.C. § 1002(14)(G) because upon information and belief Defendant Jeffrey Cook, a fiduciary to the Plan, is or was the beneficial owner or holder of 50% or more of the Cook Trust.

33. **Defendant Richard Arnoldy**, in his individual capacity, was a co-founder in 1992 of the ARCO Family of construction companies. He was at the time of the ESOP Transaction a person with powers or responsibilities similar to those of a director and/or officer of ANH and related organizations whose employees were covered by the Plan, including but not limited to ARCO National Holdings, and/or was a director and/or officer. As a co-founder of the ARCO Family of companies and a director at ARCO Design/Build which was also purchased by an ARCO ESOP on December 31, 2019, Arnoldy had knowledge of the ESOP transactions that closed on December 31, 2019 and the companies purchased therein. He was a selling shareholder in the ESOP Transaction, directly or indirectly.

34. Defendant Arnoldy was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), at the time of the ESOP Transaction as a person with powers or responsibilities similar to those of a director and/or officer of ANH and related organizations whose employees

were covered by the Plan; and/or, on information and belief, as a 10 percent or more shareholder, directly or indirectly, of ARCO National Holdings.

35. **Defendant Arnoldy, as Trustee of the Richard R. Arnoldy Revocable Trust dated January 21, 1991, as amended ("Arnoldy Trust")** was a selling shareholder in the ESOP Transaction, directly or indirectly. As a 10% or more shareholder in ANH, acting through Defendant Arnoldy as the Trustee, the Arnoldy Trust was a "party in interest" as to the ESOP as defined in ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

36. **Defendant Stephen F. Holste**, in his individual capacity, was at the time of the ESOP Transaction a Director, the Treasurer, and the Vice President–Finance and Chief Financial Officer (CFO) of ANH, and was a director and/or officer or a person with powers or responsibilities similar to those of a director and/or officer of related organizations whose employees were covered by the Plan, including but not limited to ARCO National Construction and ARCO Specialty Construction. He was a selling shareholder in the ESOP Transaction, directly or indirectly. He resides or may be found in this District. Defendant Holste was a fiduciary with respect to the Plan at the time of the ESOP Transaction because he served on the ANH Board of Directors and the Company is the Plan's Named Fiduciary. As a director, he exercised the Board's fiduciary authority to appoint other fiduciaries, including the ESOP Trustee and the ESOP Committee.

37. Defendant Holste was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), at the time of the ESOP Transaction as a director and officer of ANH, and/or as a director or officer or individual having powers or responsibilities similar to those of a director or officer of related organizations whose eligible employees were covered by the Plan; and/or, on information and belief, as a 10 percent or more shareholder, directly or indirectly, of ANH.

Holste was also a party in interest under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), as a Plan fiduciary.

38. **Defendant Stephen F. Holste as Trustee of the Stephen Holste Revocable Trust dated October 21, 2011 ("Holste Trust")** was a selling shareholder in the ESOP Transaction, directly or indirectly. As a 10% or more shareholder in ANH, acting through Defendant Holste as the Trustee, the Holste Trust was a "party in interest" as to the ESOP as defined in ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H). The Holste Trust was also a party in interest under ERISA § 3(14)(G), 29 U.S.C. § 1002(14)(G) because upon information and belief Defendant Stephen Holste, a fiduciary to the Plan, is or was the beneficial owner or holder of 50% or more of the Holste Trust.

39. **Defendant Charles E. Franke II**, in his personal capacity, was at the time of the ESOP Transaction a person with powers or responsibilities similar to those of a director and/or officer of ANH and related organizations whose employees were covered by the Plan, and/or was a director and/or officer. At the time of the Transaction, Franke supervised the ANH controller, and was involved with the preparation, review and approval of Company financial projections. As a certified public accountant and a Director of Accounting and a CFO who worked within the ARCO Family of companies since 2001, including at ARCO Design/Build which was also purchased by an ARCO ESOP on December 31, 2019, Franke had knowledge of the ESOP transactions that closed on December 31, 2019 and the companies purchased therein. He was a selling shareholder in the ESOP Transaction, directly or indirectly.

40. Defendant Franke was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), at the time of the ESOP Transaction as a director or officer or individual having powers or responsibilities similar to those of a director or officer of ANH or related

organizations whose eligible employees were covered by the Plan; and/or, on information and belief, as a 10 percent or more shareholder, directly or indirectly, of ANH.

41. **Defendant Charles E. Franke II as Trustee of the Charles E. Franke II Declaration of Trust dated January 30, 2018**, **as amended ("Franke Trust")** was a selling shareholder in the ESOP Transaction, directly or indirectly. As a 10% or more shareholder in ANH, acting through Defendant Franke as the Trustee, the Franke Trust was a "party in interest" as to the ESOP as defined in ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

42. **Defendant Tony Alan Roeschlein**, in his individual capacity, was at the time of the ESOP Transaction an employee of ANH and/or related organizations whose employees were covered by the Plan. He was a selling shareholder in the ESOP Transaction, directly or indirectly. He resides or may be found in this District.

43. Defendant Roeschlein was a "party in interest" under ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H), at the time of the ESOP Transaction as an employee of ANH or of a related organization whose eligible employees were covered by the Plan; and/or, on information and belief, as a 10 percent or more shareholder, directly or indirectly, of ANH.

44. **Defendant Tony Alan Roeschlein as Trustee of the Tony Alan Roeschlein Trust dated September 15, 2006 ("Roeschlein Trust")** was a selling shareholder in the ESOP Transaction, directly or indirectly. As a 10% or more shareholder in ANH, acting through Defendant Roeschlein as the Trustee, the Roeschlein Trust was a "party in interest" as to the ESOP as defined in ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

## FACTUAL ALLEGATIONS

**ANH and the ARCO Family of Construction Companies**

45. ARCO National Holdings, Inc. ("ANH" or the "Company") is a design-build construction industry firm based in St. Louis, Missouri. ANH is part of what is billed as "A Family of Construction Companies" referred to as ARCO, founded in 1992 in St. Louis, Missouri by Defendants Cook and Arnoldy. At the time of the ESOP Transaction, ANH and the other companies within the ARCO Family all relied on a centralized financial software system, and utilized marketing, information technology, and other operational and bac-office services provided through ARCO Business Services.

46. ANH's origin as a separate company in the ARCO Family of construction companies dates to 2000, when its principal operating company, ARCO National Construction, was established in St. Louis. ARCO National Construction Company, Inc., was incorporated in Delaware on March 29, 2000. Defendant Bridell was the long-time leader of ARCO National Construction, as President and Director. On December 23, 2019, eight days before the ESOP Transaction, ARCO National Construction Company, Inc. was converted to a Delaware limited liability company and its name was changed to ARCO National Construction, LLC.

47. ANH was incorporated in Delaware on December 26, 2019, five days before the ESOP Transaction. ANH was initially named ARCO Holdings Parent, Inc., until on or about August 21, 2020.

48. Effective December 27, 2019, four days before the ESOP Transaction, the following companies were merged into ANH: ARCO Holdings, Inc.; ARCO National New England NEWCO, Inc.; ARCO National Construction – KC NEWCO, Inc.; ARCO National

Living Group NEWCO, Inc.; Midwest Concrete Constructors NEWCO, Inc.; and GMA Architects NEWCO, Inc.

49. ANH established the Plan with a retroactive effective date of January 1, 2019.

50. Qualifying employees of ANH and its related organizations who participate in the Plan, and leased employees and co-employed persons through ARCO Business Services, are covered by the Plan.

51. ANH is and was from the inception of the Plan the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

52. The Plan's most recent 2024 Form 5500, filed on October 15, 2025, reports that ANH's address, in its capacities as Plan Sponsor and Plan Administrator, is at 8300 Eager Road, Suite 500, Brentwood, Missouri 63144. ANH reported its address as 900 North Rock Hill Road, St. Louis, Missouri 63119 on its annual Forms 5500 in 2019, 2020, 2021, 2022, and 2023.

53. ANH is and was from the inception of the Plan the Plan's Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and the Named Fiduciary of the Plan within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a). The Company is responsible for the administration and management of the Plan. The Company's Board of Directors has appointed an ESOP Committee to act as its agent in performing these duties.

54. ANH is and was an ERISA fiduciary to the Plan at all relevant times because it is the Plan's Named Fiduciary; it is the Plan Administrator; and it possesses and exercised through the Board of Directors the fiduciary power to appoint and remove other Plan fiduciaries, including the ESOT trustee and the ESOP Committee.

55. As a Plan fiduciary, and an employer whose employees are covered by the Plan, ANH is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

**The Plan and the ESOP Transaction**

56. The Plan is a pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1). It is a defined contribution plan, under which a separate individual account is maintained for each participant.

57. The Plan is designed and operates as an employee stock ownership plan (ESOP) within the meaning of Internal Revenue Code Section 4975(e)(7) and Section 407(d)(6) of ERISA, 29 U.S.C. § 1107(d)(6). The Plan was designed to invest primarily in the employer securities of ANH. The Plan's principal asset was ANH stock at all times since the ESOP Transaction. ANH stock is not and never was readily tradeable on an established securities market.

58. On December 31, 2019, the Plan, through its ESOT, purchased from Selling Shareholders, directly or indirectly, 647,353 shares of ANH common stock for, after a working capital adjustment, approximately $160,834,853.

59. The ESOP financed the purchase of the ANH shares with loans payable to the Selling Shareholders which were subsequently assigned to the Company bringing the Plan's indebtedness to approximately $160,835,000 at December 31, 2019. The term loan agreement with the Company provides all outstanding principal and accrued interest thereon are due in full by December 31, 2079.

60. ANH represents that the company is "100% Employee Owned" as an ESOP. As a result of the ESOP Transaction, the Plan and the participants who participated in it became owners of, on information and belief, all of the issued shares of ANH common stock, with the ESOT being the legal shareholder and participants having beneficial interests. Because rank and file ANH employees, including Plaintiff, did not participate in the development, negotiation, or closing of the ESOP Transaction, and have not been provided with copies of the Transaction documents, they lack information regarding specific terms of the Transaction.

61. The Notes to Financial Statements to the Plan's 2019–2024 Forms 5500 each state: "The Plan invests in Company common stock and has indebtedness to the Company. These are related-party and party-in-interest transactions. Such parties are parties in interest under ERISA."

62. As noted above, ANH is just one component of what is billed as "A Family of Construction Companies" referred to as ARCO that was founded by Jeffrey L. Cook and Richard R. Arnoldy in 1992. Other affiliated ARCO companies have and had directors and officers overlapping with ANH. Some of these affiliated ARCO companies have also established ESOPs and sold company stock to such plans; prior to such sales to those other ESOPs, the shareholders of the various ARCO companies overlapped.

**The Fiduciary Trustee**

63. ANH, by its Board of Directors, appointed the Trustee as trustee of the Plan's ESOT prior to the ESOP Transaction at a time when Selling Shareholders owned and controlled the Company and/or the operating companies that were merged into the Company. As trustee, the Trustee had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for ANH stock. Therefore, the Selling

Shareholders who served as directors—the seller-side in the ESOP Transaction—appointed the buyer-side counter-party trustee in the Transaction. An unconflicted independent fiduciary did not make the appointment.

64. The Trustee received fees from ANH for its services as transaction trustee in the ESOP Transaction to the buyer-side Plan under a contract made prior to the Selling Shareholders' sale of ANH stock to the Plan, while the Selling Shareholders still owned ANH or the operating companies merged into ANH. The Trustee also received fees after the ESOP Transaction because it was appointed ongoing trustee to the Plan to serve following the closing of the Transaction.

**The Role of Tenor ESOP Partners**

65. Prior to consummating the ESOP Transaction, the Selling Shareholders selected an advisor, Tenor ESOP Partners (f/k/a Tenor Capital Partners, LLC) ("Tenor"), to act as the "architect" or "quarterback" for the Transaction. Among other things, Tenor's role was to select the buy-side Trustee for the Selling Shareholders to appoint to purportedly represent the Plan and its participants. Tenor also ensured corporate and Plan governance control was retained by the Selling Shareholders so they did not lose control to employees in the ESOP Transaction.

66. Selling Shareholders, through ANH and as its Board, appointed the Trustee to be the buyer-side trustee on the advice of Tenor. Tenor also advised the sell-side in other ESOP transactions involving ARCO Family companies.

67. Tenor's standard contract with selling shareholders in ESOP transactions provides that Tenor's services will include: "assemble the team responsible to execute the Transaction and administer the ESOP after closing, including, ESOT (employee stock ownership trust) trustee."

68. At a deposition in February 2021, Todd Butler, founder and Managing Partner of Tenor, could name only three ESOP trustee businesses that he generally tries to engage for the buyer-side on deals, one of which was Aegis, which with its Managing Member Lesser is the defendant fiduciary Trustee here.

69. "[T]he ESOP world [is] a very incestuous community" because of the "significant long-term business relationships" resulting from parties working together in many ESOP deals, and ESOP trustees maintain "extensive and lucrative business relationships" with seller-side advisors. *See Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 771, 779 (4th Cir. 2019) (citation omitted).

70. The Trustee, which sits on the buyer-side in ESOP transactions, derives substantial business from its relationship with the seller-side ESOP advisor Tenor. The observation that the ESOP world is a "very incestuous community" is shown true here. *See also Brundle v. Wilmington Tr. N.A.*, 241 F. Supp. 3d 610, 637, 643 (E.D. Va. 2017) (on trial decision, court finds trustee did "lackluster due diligence" and its explanation that ESOP trustees do a "different level of due diligence" than a "real world buyer is going to do" "does not satisfy," and that "the ESOP world ... [being] a very incestuous community" may have been the cause of the trustee becoming "complacent"), *aff'd* 919 F.3d 763 (4th Cir. 2019).

71. Tenor quarterbacked this ESOP transaction and the ESOP transaction for at least one other ARCO company. Tenor guided the decision makers on those ESOP transactions to pick Lesser and Aegis to serve as Trustee for the buy-side in those transactions. Lesser and Aegis were highly motivated and incentivized to cater to please the sell-side in these transactions because robust due diligence and tough negotiating might cause Tenor to recommend someone else to serve as trustee. Further, serving as ongoing ESOP Trustee after ESOP transactions

provided Lesser and Aegis with an annual revenue stream from multiple ESOPs for doing very little work.

**The Plan was Injured by its Overpayment for Company Stock in the ESOP Transaction**

72. Since on or about the time of the Company's formation and the ESOP Transaction, ANH has been under the control of long-time directors, officers, and former shareholders of ANH and its subsidiaries, including Defendants Bridell, Keeven, Cook, and Holste, who were Directors at the time of the Transaction, as well as Defendants Arnoldy and Franke, who held senior leadership roles in the ARCO Family of companies. Christopher Wilson (current CEO), Brandon Lemmons (current COO), and Austin Moore (former CAO) all became directors in the years after the ESOP Transaction (together with Bridell, Keeven, Cook, and Holste, the "Inside Directors").

73. The Selling Shareholders were centrally involved in conceiving, facilitating, and executing the Transaction, including conducting a process for ownership transition from Selling Shareholders to an ESOP rather than to an outside buyer; hiring and working with Transaction advisors for ANH and Selling Shareholders; hiring a compliant Trustee to nominally represent the counter-party Plan; creating ANH including by creating and/or restructuring other ARCO companies in advance of the ESOP Transaction, and causing corporate mergers in advance of the Transaction; directing the preparation of financial projections by ARCO and ANH's management and staff for use in valuations in the Transaction; and approving ANH's lending of over $160 million to the ESOT in the fully leveraged transaction.

74. Selling Shareholders retained control of the ANH Board after the ESOP Transaction as a result of their positions as directors and officers; through employees, appointees, and/or proxies holding positions as directors and/or officers; due to the millions of

dollars of Company and ESOT debt they held from the ESOP Transaction including but not limited to rights arising from warrants or other synthetic equity issued to them; through various transaction documents, including the stock purchase agreement and warrants; and through a compliant Trustee that could be fired by ANH's Board of Directors, making any alleged Trustee control illusory.

75. Selling Shareholders further retained control over ANH's Board of Directors after the ESOP purchased the Company because, under the Plan's governing documents, the Trustee is subject to the direction of the ESOP Committee, which is appointed by and an agent of the Board, for voting Company Stock.

76. Plan participants are permitted to vote ANH stock allocated to their accounts on certain matters such as a sale of substantially all the assets of ANH, a merger or consolidation, or a recapitalization of ANH. These are critical prerogatives of control that did not accrue to the ESOP when it acquired ANH. The Trustee is directed by the ESOP Committee on voting unallocated ANH stock on the above matters that Plan participants are permitted to vote on. The Trustee is directed by the ESOP Committee on voting ANH stock on all other matters, including the election of members of the Board. This means the Trustee had no discretion to vote on Board members or any other valuable prerogative of control such as setting management compensation, strategic planning, and the like. The ESOP had no control over the enterprise whatsoever.

77. Tenor ESOP Partners, the architect of the ESOP Transaction, advertises that an "ESOP Misconception" is that "Selling shareholders will lose control to employees." Tenor Managing Partner André Schnabl explained in a November 21, 2019 episode of the business podcast Decision Vision: "The reality is that the selling shareholder, although they have sold a part of their company or potentially 100 percent of their company, they still control the board of

directors." In a July 13, 2017 episode of another business podcast called "Life After Business," Mr. Schnabl spoke to the same point: "The selling shareholders continue to control the business. They are not removing control and providing the trust with the ability to run their business or control their business. Nothing has happened from a control perspective until the selling shareholders are long gone. They will appoint the entire board; they can fire the trustee; they decide on that all day-to-day operating decisions nothing has changed. So it's extremely important that selling shareholders don't consider this a typical sale where the buyer is now in control. In this case, the seller remains in control until they put 100 percent of their money out of, out of the deal and in fact under certain circumstances they can continue to control thereafter, uh, because of their warrant positions."

78. The ANH Board did not have any outside independent directors until 2022 when Clay Scharff joined the Board. Yet Mr. Scharff, as the lone independent director, lacked the power to overrule the majority Inside Directors even if he wanted to challenge their control.

79. The design of the ESOP Transaction and Company control features denied the Plan the control it should have received for its more than $160 million purchase.

80. The Trustee valued the ANH stock on a control basis by using an industry capital structure instead of the Company's actual capital structure in its income method, which yielded a control value. But the Plan did not obtain control of the Company, as explained above, because Selling Shareholders maintained control over the Board and, through the Board, ANH. The Plan should have received a discount for lack of control, but it did not. This means the Plan paid more than fair market value for the stock.

81. The Trustee failed to apply a sufficient discount for lack of marketability (DLOM) to its valuation in the ESOP Transaction because it failed to sufficiently account for the

lack of marketability for the private stock that was purchased by the ESOT. The valuation applied an insufficient DLOM because Plan participants, beneficial owners rather than legal owners, have a right to have the Company or the Trustee buy any shares of ANH stock distributed to participants that is not publicly traded (the Put Option). But the ESOT was the purchaser in the ESOP Transaction and participants' sales to the Company or ESOT do not reduce the lack of marketability to the ESOT of the stock the ESOT owns. In other words, the ESOP's acquisition price was for more than fair market value because the DLOM applied in the transaction was premised on put rights that did not run to the buyer. In addition, the Plan's lack of control over ANH made it lack marketability. The Plan overpaid for ANH stock in the Transaction due to the Trustee's improper application of DLOM of 5%. Restricted stock studies and other data sources indicate the DLOM should have been at least 10%, if not more. Applying a modest DLOM of 10% by itself means the ESOP paid approximately $10 million more than fair market value.

82. In determining the value of private company stock, the fair market value standard is the price at which the stock would change hands between a hypothetical willing buyer and a hypothetical willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of all relevant facts. Adequate consideration for an ESOP transaction is governed by reasonably knowledgeable, hypothetical buyers and sellers rather than tailoring a "hypothetical" buyer to a particular buyer like an ESOP trustee. Reducing the DLOM based on the Put Option was therefore improper because the value was based on the specific buyer, an ESOP.

83. The Plan does not prohibit "synthetic equity." Synthetic equity may include, *inter alia*, warrants, stock options, restricted stock, a deferred insurance stock right, a stock

appreciation right payable in stock, or similar interest or right that gives the holder the right to acquire or receive stock of an S Corporation in the future, a right to a future payment (payable in cash or any other form other than stock of the S corporation) from an S corporation that is based on the value of the stock of the S corporation, such as a stock appreciation right that is payable in cash or phantom stock unit with respect to stock of an S corporation that is payable in cash, or other forms of nonqualified deferred compensation.

84. ANH is an S corporation and dividend income consists primarily of S corporation distributions from the Company.

85. Mr. Schnabl of Tenor encourages the use of warrants in ESOP transactions because they can allow selling shareholders to receive "an amount over and above fair value" for their companies, which "can be as much as 20 or 30 percent of the entire business," which over the course of a decade can be "worth more than the entire business was worth the day you sold it." The value of the warrant can be manipulated because, as Mr. Schnabl has noted: "a warrant is the right to buy shares in the business at a price that is agreed-upon." He further explained the warrant position "is something that is unique to these, these ESOPs." Warrants thus may give selling shareholders who take debt for the sale of their companies in ESOP transactions compensation above and beyond the amount of the interest rate on the loan paid by an ESOP. "It is the second bite of the apple," Mr. Schnabl explains.

86. While the Plan, through the ESOT, purchased 647,353 shares of ANH common stock, ANH was authorized to issue 2,000,000 shares.

87. Synthetic equity is usually granted to high level executives by the board of directors. Here, the Selling Shareholders were on the Board and/or high-level officers or "key

management personnel" of ANH and subsidiaries in the relevant period. Selling Shareholders received synthetic equity in, or thereafter as allowed in, the ESOP Transaction.

88. When synthetic equity is granted, it dilutes the value of company shares held by ESOP participants and transfers that value to those persons holding the synthetic equity. Thus, when synthetic equity is granted, it reduces the value of the ANH shares owned by the Plan. This either harms the economic interest of Plan participants or, if the synthetic equity is not properly taken into account in the valuation of ANH stock, the stock is reported at inflated values.

89. A rational buyer under no compulsion to purchase ANH under terms like these (*i.e.*, a Board controlled by Selling Shareholders, who could dilute the value of all ANH stock by granting themselves synthetic equity) would not have purchased the company stock that the ESOP was forced to purchase, or would have demanded a significant discount in the price of the stock to account for these defects of ownership.

90. The Plan overpaid for ANH, and Selling Shareholders received improper profits, as a result of warrants and/or other synthetic equity issued to them. A rational buyer under no compulsion to purchase ANH would not have agreed to the warrants/synthetic equity upon its purchase of ANH stock.

91. The Trustee's appraisal of ANH stock in the ESOP Transaction was based upon a combination of income, market, and asset valuation approaches. ANH management provided data from historical and projected financial information of the Company to the Trustee for the valuation of ANH stock in the ESOP Transaction. Forecasts prepared by ANH management were used in the valuation methodology employed by the Trustee and its financial advisor. At the time of the ESOP Transaction, ANH leadership set an "audacious" growth target, with an aggressive goal of 10% annual profit margins, but it frequently did not meet those profit targets. A 10%

margin was much higher than industry averages so it was not reasonable to assume that the Company would meet these profit targets.

92. In addition, the valuation used "comparable" publicly traded companies that were different from ANH in terms of corporate structure, markets or industries served, offering differing services and having differing segments, and/or having different risk profiles and fixed capital needs. Using guideline public companies to determine the fair market value of ANH had the effect of improperly increasing the indicated value because the public companies were too different from ANH to provide a reliable indication of value.

93. The Trustee did not adequately challenge information provided by ANH management or the valuation techniques of its financial advisor and therefore failed to negotiate for the true, lower fair market value price of ANH stock as of the date of the ESOP Transaction.

94. Another ESOP trustee, Miguel Paredes of Prudent Fiduciary Services, LLC, has said to participants of a different ESOP that he decided to leave the Department of Labor and become an ESOP trustee because some ESOP trustees, "maybe like your former trustee [Defendant Lesser], didn't weren't [sic] quite understanding their responsibilities and didn't do as good of a job as they needed to do."

95. The Trustee was rewarded with engagement as the Plan's ongoing trustee by Selling Shareholders, who still controlled ANH, upon completing the ESOP Transaction to their satisfaction. The Trustee was also rewarded with appointment as transaction trustee for other ESOP transactions involving other companies in the ARCO Family of construction companies, and on information and belief as ongoing trustee for such plans.

96. In breach of its duties as fiduciary and trustee under ERISA, the Trustee caused the Plan to engage in prohibited transactions. Based on their respective roles within ARCO,

ANH and subsidiaries, their participation in the ESOP Transaction, and their knowledge from authorizing the Company to participate in the loan component of the ESOP Transaction, Selling Shareholders knowingly participated in the prohibited transactions.

97. The Plan suffered losses as a result of the ERISA prohibited transactions alleged herein, in an amount to be determined following discovery and expert analysis of non-public information concerning the Trustee's and its financial advisor's valuation and due diligence methodologies, ANH financials and growth projections, and other documents and information that were considered or should have been considered in the ESOP Transaction.

98. As a result of the prohibited transactions, Plaintiff and the Plan's participants, whose losses are coterminous with the Plan's, received diminished stock allocations, saw their Plan take on excessive debt to finance the Transaction, and suffered monetary losses to their individual Plan accounts.

99. The Trustee is liable to the Plan for the difference between the price paid by the Plan and the fair market value of ANH shares at the time of the ESOP Transaction.

100. The Selling Shareholders are liable to the Plan to repay the difference between the price they received and the fair market value of their ANH shares at the time of the ESOP Transaction.

101. Defendants Bridell, Keeven, Cook, and Holste are liable to the Plan for its losses resulting from breaches of their fiduciary and co-fiduciary duties under ERISA.

102. All consideration paid to the Selling Shareholders in connection with the ESOP Transaction, including warrants and notes they received, is in the current possession of the Selling Shareholders and/or traceable.

## CLAIMS FOR RELIEF

## COUNT I

**Causing Prohibited Transactions Forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a), Against Lesser and Aegis Trust**

103. Plaintiff incorporates the preceding paragraphs as though set forth herein.

104. ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here the Trustee, Defendants Robert E. Lesser and Aegis Trust, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here ANH stock, with a party in interest, here Selling Shareholders, as took place in the ESOP Transaction.

105. ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits the Trustee from causing the Plan to borrow money from a party in interest, here Selling Shareholders and ANH, as took place in the ESOP Transaction.

106. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits the Trustee from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to a party in interest, here Selling Shareholders, of any assets of the Plan, as took place in the ESOP Transaction with the transfer of Plan assets to Selling Shareholders for stock.

107. The stock and loan transactions between the Plan and the parties in interest were authorized by the Trustee in its capacity as trustee for the Plan.

108. The Trustee caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

109. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits

of the fiduciary which have been made through the use of assets of the plan by the fiduciary, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

110. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief to a plan under ERISA § 409.

111. The Trustee has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

### Knowing Participation in ERISA Violations Pursuant to 29 U.S.C. § 1132(a)(3), Against Selling Shareholder Defendants

112. Plaintiff incorporates the preceding paragraphs as though set forth herein.

113. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), *inter alia*, permits a plan participant to bring a civil action to obtain appropriate equitable relief to redress violations of the provisions of Title I of ERISA, or to enforce the provisions of Title I of ERISA or the terms of a plan.

114. The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

115. As a result of the prohibited stock transaction described above, Selling Shareholders received Plan assets in payment above fair market value for their ANH stock.

116. Selling Shareholders were ANH and subsidiary and ARCO Family affiliate directors and/or officers and/or employees and were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

117. Selling Shareholders knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their ANH stock and taking of loans from them and ANH in the ESOP Transaction, (3) that the Trustee was the fiduciary trustee to the Plan, (4) that Selling Shareholders included directors, officers, and employees of ANH and related organizations that participate in the Plan, Plan fiduciaries, and/or 10% or more shareholders, (5) that the Trustee caused the Plan's ESOT to engage in the stock and loan transactions, and (6) that they received monetary assets of the Plan in the ESOP Transaction.

118. As parties to and/or beneficiaries of the stock purchase agreement containing the terms of the Plan's stock purchase from Selling Shareholders and countersigned by the Trustee on behalf of the ESOT; as the sellers of $160 million in stock with an interest in having knowledge of and/or competently negotiating the Transaction; as officers and directors of ANH, which participated in the loan component of the Transaction with their approval, and which was the sponsor, Named Fiduciary, and fiduciary administrator of the Plan; as Plan fiduciaries; as directors and officers of ANH, whose team provided company financial information and projections to the buyer side, and which made other disclosures in response to requests for information that showed the scope of the Trustee's inadequate due diligence, and that the Trustee caused the ESOT to pay above fair market value for ANH stock; and as directors/officers/owners who knew the control features of the Company and Transaction that caused the Plan to overpay on a control basis or due to want of a discount for lack of control and knew other facts that made management projections unreasonably optimistic, Selling Shareholders were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction; that the Plan paid more than fair market value in the Transaction; that the Trustee did not adequately investigate and value the

stock; and that the loans were not primarily for the benefit of participants and beneficiaries of the plan but for the interests of Selling Shareholders.

119. Further, it may be inferred that Selling Shareholders had "reasonable knowledge of all relevant facts" because the fair market value standard is that fair market value is the price at which the stock would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and *both having reasonable knowledge of all relevant facts*. Selling Shareholders had knowledge of the relevant facts, and based upon them caused ANH to take part in the ESOP Transaction, and took part in the Transaction themselves, directly or indirectly.

120. Selling Shareholders are liable for knowingly participating in violations of ERISA § 406(a)(1)(A), (B) and (D), 29 U.S.C. § 1106(a)(1)(A), (B) and (D), alleged in Count I.

121. Selling Shareholders have profited from the prohibited transactions in an amount to be proven at trial, and upon information and belief, they remain in possession of assets that belong to the Plan.

122. Selling Shareholders are subject to appropriate equitable relief including disgorgement or restitution of any ill-gotten gains they received in connection with the ESOP Transaction, accounting for profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), reformation of the ESOP Transaction contracts to provide the Plan pays no more than fair market value for ANH stock as of the date of the Transaction and to give the Plan powers or other consideration for which it paid but did not receive, having the transaction rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## COUNT III

**Breach of Fiduciary and Co-Fiduciary Duties Pursuant to 29 U.S.C. §§ 1104, 1105 Against Bridell, Keeven, Cook, and Holste**

123. Plaintiff incorporates the preceding paragraphs as though set forth herein.

124. A person who appoints a trustee for an ESOP transaction is a fiduciary.

125. An appointing fiduciary must act diligently and prudently in the selection of a trustee and has an ongoing duty to monitor the trustee and provide information to the trustee in the appointing fiduciary's possession that the trustee needs to carry out its duties.

126. Defendants Bridell, Keeven, Cook, and Holste hired Tenor because Tenor explained they would "continue to control the business. They are not removing control and providing the trust with the ability to run their business or control their business. Nothing has happened from a control perspective until the selling shareholders are long gone. They will appoint the entire board; they can fire the trustee; they decide on that all day-to-day operating decisions nothing has changed. So it's extremely important that selling shareholders don't consider this a typical sale where the buyer is now in control. In this case, the seller remains in control until they put 100 percent of their money out of, out of the deal and in fact under certain circumstances they can continue to control thereafter, uh, because of their warrant positions."

127. ANH's Board—including Defendants Bridell, Keeven, Cook, and Holste—made the decision to appoint the Trustee to serve as trustee for the Plan. Defendants Bridell, Keeven, Cook, and Holste are appointing fiduciaries.

128. Defendants Bridell, Keeven, Cook, and Holste failed to engage in a diligent and prudent process in selecting the Trustee. Relying on Tenor, they selected a Trustee well-known to Tenor that causes the ESOPs it represents to pay control values for companies without acquiring control. Defendants Bridell, Keeven, Cook, and Holste and Tenor dangled the prospect

of fees for multiple ESOP transactions and the ongoing annual trustee fees for an ESOP to encourage the Trustee to allow them to keep control after selling ANH. At all times, Defendants Bridell, Keeven, Cook, and Holste operated under the guidance of Tenor and benefited from Tenor's cozy relationship with the Trustee and knew they would keep control and knew they would receive warrants that had a very large dilutive impact on the ESOP's equity.

129. Defendants Bridell, Keeven, Cook, and Holste possessed information that the Trustee needed to fulfill its duties in ensuring the Plan paid no more than fair market value, including that the financial projections provided by the Selling Shareholders and Tenor were unreasonably optimistic because they projected profit margins that were higher than historic margins, ANH had failed to meet such projections in the past, and the margins were significantly higher than industry average.

130. As a result of the prohibited stock transaction described above, Selling Shareholders received Plan assets in payment above fair market value for their ANH stock.

131. Defendants Bridell, Keeven, Cook, and Holste breached their fiduciary duties by selecting a trustee to serve their interests and not the Plan's or its participants' and knowingly providing overly optimistic projections to the Trustee.

132. In addition, Defendants Bridell, Keeven, Cook, and Holste breached co-fiduciary duties.

133. As parties to and/or beneficiaries of the stock purchase agreement containing the terms of the Plan's stock purchase from Selling Shareholders and countersigned by the Trustee on behalf of the ESOT; as sellers of millions in Company stock with an interest in having knowledge of and/or competently negotiating the Transaction; as officers and directors of ANH, which participated in the loan component of the Transaction with their approval, and which was

the sponsor, Named Fiduciary, and fiduciary administrator of the Plan; as Plan fiduciaries; as directors and officers of ANH, whose team provided Company financial information and projections to the buyer side, and which made other disclosures in response to requests for information that showed the scope of the Trustee's inadequate due diligence, and that the Trustee caused the ESOT to pay above fair market value for ANH stock; and as directors/officers/owners who knew the control features of the Company and Transaction that caused the Plan to overpay on a control basis and/or due to want of a discount for lack of control and knew other facts that made management projections unreasonably optimistic, Selling Shareholders (including Defendants Bridell, Keeven, Cook, and Holste) were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction; that the Plan paid more than fair market value in the Transaction; that the Trustee did not adequately investigate and value the stock; and that the loans were not primarily for the benefit of participants and beneficiaries of the plan but for the interests of Selling Shareholders.

134. Further, it may be inferred that Defendants Bridell, Keeven, Cook, and Holste had "reasonable knowledge of all relevant facts" because the fair market value standard is that fair market value is the price at which the stock would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and *both having reasonable knowledge of all relevant facts*. Defendants Bridell, Keeven, Cook, and Holste had knowledge of the relevant facts, and based upon them caused ANH to take part in the ESOP Transaction, and took part in the Transaction themselves, directly or indirectly.

135. Defendants Bridell, Keeven, Cook, and Holste knowingly participated in the Trustee's prohibited transaction violations because they knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their ANH stock and taking of loans

from them and ANH in the ESOP Transaction, (3) that the Trustee was the fiduciary trustee to the Plan, (4) that Selling Shareholders included directors, officers, and employees of ANH and related organizations that participate in the Plan, Plan fiduciaries, and/or 10% or more shareholders, (5) that the Trustee caused the Plan's ESOT to engage in the stock and loan transactions, (6) that they received monetary assets of the Plan in the ESOP Transaction, (7) that the Trustee would pay a control value even though the ESOP would not get control, and (8) the Trustee would rely on overly optimistic financial projections that would cause ANH to be overvalued. This violated 29 U.S.C. § 1105(a)(1).

136. Defendants Bridell, Keeven, Cook, and Holste knew the Trustee caused a prohibited transaction because they knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their ANH stock and taking of loans from them and ANH in the ESOP Transaction, (3) that the Trustee was the fiduciary trustee to the Plan, (4) that Selling Shareholders included directors, officers, and employees of ANH and related organizations that participate in the Plan, Plan fiduciaries, and/or 10% or more shareholders, (5) that the Trustee caused the Plan's ESOT to engage in the stock and loan transactions, (6) that they received monetary assets of the Plan in the ESOP Transaction, (7) that the Trustee would pay a control value even though the ESOP would not get control, and (8) the Trustee would rely on overly optimistic financial projections that would cause ANH to be overvalued. Although Defendants Bridell, Keeven, Cook, and Holste knew or should have known about the Trustee's prohibited transaction violations, they have done nothing to remedy the violations. Thus Defendants Bridell, Keeven, Cook, and Holste breached their duties under 29 U.S.C. § 1105(a)(3).

137. Defendants Bridell, Keeven, Cook, and Holste are liable under 29 U.S.C. § 1109 to restore all losses to the Plan, to disgorge profits, and are subject to other appropriate equitable or remedial relief.

**CLASS ACTION ALLEGATIONS**

138. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All vested participants in the ARCO Holdings Employee Stock Ownership Plan ("Plan") and the beneficiaries of such participants as of the date of the December 31, 2019 ESOP Transaction or any time thereafter. Excluded from the Class are the shareholders who sold their ARCO National Holdings, Inc. (f/k/a ARCO Holdings Parent, Inc.) ("ANH") stock to the Plan in the December 31, 2019 ESOP Transaction, directly or indirectly, and their immediate families; the directors and officers of ANH and their immediate families; the Plan Committee members and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

139. The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's most recent Form 5500 filing reports that as of December 31, 2024, there were 504 participants in the Plan.

140. Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

i. Whether Defendants Lesser and Aegis served as trustee in the Plan's acquisition of ANH stock;

ii. Whether Defendants Lesser and Aegis were ERISA fiduciaries of the Plan;

iii. Whether Defendants Lesser and Aegis caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase

ANH stock from, take loans from, and transfer assets of the Plan to, parties in interest;

iv. Whether ANH was a party in interest and gave a loan to the Plan;

v. Whether Selling Shareholders were parties in interest;

vi. Whether Defendants Bridell, Keeven, Cook, and Holste were fiduciaries for the Plan;

vii. Whether Selling Shareholders gave loans to the Plan;

viii. Whether Selling Shareholders knowingly participated in the prohibited transactions;

ix. Whether Defendants Bridell, Keeven, Cook, and Holste breached fiduciary and co-fiduciary duties;

x. The amount of losses suffered by the Plan and its participants as a result of the Trustee's ERISA violations; and

xi. The appropriate relief for Defendants' violations of ERISA.

141. Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of her Plan account because the Plan paid above fair market value and took on excessive loans for ANH stock, resulting in her being allocated fewer shares of stock, and she continues to suffer such losses in the present because the Trustee failed to correct the overpayment by the Plan.

142. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

143. Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members, and/or because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants.

144. The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A. Declare that Defendants Aegis and Lesser, as Trustee, caused the Plan to engage in prohibited transactions and thereby breached its duties under ERISA;

B. Declare that Selling Shareholders knowingly participated in a prohibited transaction with the Plan in violation of ERISA;

C. Declare that Defendants Bridell, Keeven, Cook, and Holste breached fiduciary and co-fiduciary duties;

D. Order Defendants to make good to the Plan and/or to any successor trust(s) the losses resulting from the violations of ERISA and disgorge any profits they made through use of assets of the Plan;

E. Order reformation of the ESOP Transaction contracts to provide the Plan pays no more than fair market value for ANH stock as of the date of the Transaction, to provide the Plan receives that for which it paid including control of ANH where it

did not receive a discount for lack of control and paid on a control basis and did not obtain control of ANH, and any other appropriate reformation;

F. Order rescission of the ESOP Transaction (as a fallback remedy only in lieu of a monetary award of the Plan's losses, restitution or disgorgement);

G. Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

H. Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

I. Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendants' breaches of ERISA;

J. Remove the Trustee as Plan fiduciary, enjoin it from acting as a fiduciary for any employee benefit plan that covers or includes any ANH employees or members of the Class, and appoint an independent fiduciary in place of the Trustee;

K. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

L. Enjoin Defendants from dissipating any of the proceeds they received from the Transaction held in their actual or constructive possession until the Plan participants' rights can be adjudicated;

M. Enjoin Defendants from transferring or disposing of any of the proceeds they received from the Transaction to any person or entity, which would prejudice, frustrate, or impair the Plan's and Plan participants' ability to recover the same;

N. Order Defendants to pay prejudgment and post-judgment interest;

O. Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative, and her counsel as class counsel; and

P. Award such other and further relief as the Court deems equitable and just.

Dated: December 2, 2025

*/s/ Mark G. Boyko*
Mark G. Boyko, 57318(MO)
**BAILEY & GLASSER LLP**
34 N. Gore Avenue, Suite 102
Webster Groves, MO 63119
Telephone: (314) 863-5446
Facsimile: (304) 342-1110
mboyko@baileyglasser.com

Gregory Y. Porter, 458603(DC) admitted *pro hac vice*
Ryan T. Jenny, 495863(DC) admitted *pro hac vice*
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

Daniel Feinberg, 135983(CA) admitted *pro hac vice*
Todd Jackson, 202598(CA) admitted *pro hac vice*
**FEINBERG, JACKSON,**
**WORTHMAN & WASOW, LLP**
2030 Addison Street, Suite 500
Berkeley, California 94704
Telephone: (510) 269-7998
Facsimile: (510) 269-7994
dan@feinbergjackson.com
todd@feinbergjackson.com

Mary Bortscheller, 0399634 (MN) admitted *pro hac vice*
**FEINBERG, JACKSON, WORTHMAN & WASOW, LLP**
70 Raymond Avenue, Suite G-70
St. Paul, MN 55114
Telephone: (510) 606-5219
Facsimile: (510) 269-7994
mary@feinbergjackson.com

*Attorneys for Plaintiff Heidi Ralston*